IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


BILLY J. BRAKE, JR.                          )
                                             )
v.                                           )          NO. 3:07-0258
                                             )
MICHAEL J. ASTRUE,                           )
Commissioner of Social Security             )


To: The Honorable John T. Nixon, Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff could perform a "limited range of light work" (tr. 24) during the relevant time period is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the record (Docket Entry No. 17) should be denied.

1

# I. INTRODUCTION

The plaintiff filed an application for DIB on December 23, 2003,[1] alleging a disability onset date of July 7, 2003, due to lower back pain and numbness in his right leg. (Tr. 58-60, 95, 104). His application was denied initially and upon reconsideration. (Tr. 32, 37). A hearing before Administrative Law Judge ("ALJ") Linda Gail Roberts was held on January 11, 2006. (Tr. 267-301.) The ALJ delivered an unfavorable decision on June 8, 2006 (tr. 19-26), and the plaintiff sought review by the Appeals Council. (Tr. 13.) On December 29, 2006, the Appeals Council denied the plaintiff's request for review (tr. 5-7), and the ALJ's decision became the final decision of the Commissioner.

# II. BACKGROUND

The plaintiff was born on October 20, 1956, and was 46 years old as of July 7, 2003, his alleged onset date. (Tr. 58, 82.) He completed the eleventh grade (tr. 101) and his past job was working as a truck driver. (Tr. 96.)

## A. Chronological Background: Procedural Developments and Medical Records

As a result of a work-related injury, the plaintiff presented to Cheatham Medical Center on July 12, 2003, and was diagnosed with lower back pain. (Tr. 68-73, 126, 276.) An x-ray of the plaintiff's spine revealed "straightening of the normal lordotic curvature" and "mild degenerative

---

[1] In his brief in support of his motion, the plaintiff asserts that he applied for both DIB and Supplemental Security Income ("SSI"). Docket Entry No. 18, at 1. However, the record does not reflect that the plaintiff applied for SSI.

2

disc disease at L3-4 and L4-5." (Tr. 128.) The plaintiff was prescribed Lortab[2] and Cyclobenzaprine.[3] (Tr. 124, 126.)

On July 14, 2003, the plaintiff presented to Dr. Lori Ray with right hip pain that radiated to his thigh, knee, and calf. (Tr. 164.) She noted that he had decreased range of motion and pain in his "back flexion, extension, and right lateral flexion," and that he had 5/5 muscle strength in his major muscle groups. (Tr. 165.) Dr. Ray diagnosed the plaintiff with lower back and hip pain. *Id.* On July 24, 2003, the plaintiff reported to Dr. Steven Abram that the pain in his right leg and knee was a ten out of ten in severity. (Tr. 151-52.) Dr. Abram noted that the plaintiff had 5/5 strength and no atrophy in his lower extremities but had "right dorsiflexion at 4/5." (Tr. 151.) He diagnosed the plaintiff with "[r]ight lumbar radiculopathy, with disc herniation" and suggested that the plaintiff undergo a laminotomy.[4] *Id.* The plaintiff decided to continue with his non-operative care and Dr. Abram prescribed Lortab and Vioxx[5] for him. *Id.* However, on August 11, 2003, Dr. Abram

---

[2] Lortab is prescribed for the relief of moderate to moderately severe pain. Physicians Desk Reference 3143 (63rd ed. 2009) ("PDR").

[3] Cyclobenzaprine is a muscle relaxant that "relieves skeletal muscle spasm[s] of local origin without interfering with muscle function." PDR at 964.

[4] A laminotomy is a surgical procedure that divides or cuts the lamina of a vertebra. Dorland's Illustrated Medical Dictionary 996 (30th ed. 2003) ("Dorland's").

[5] According to WebMD, Vioxx is no longer available in the United States but was used to treat joint damage causing pain and loss of function.

3

performed a right L-4 laminotomy, medial foraminotomy,[6] facetectomy,[7] and discectomy[8] on the plaintiff. (Tr. 130-32.)

On September 9, 2003, the plaintiff presented to Neurological Surgeons, PC, for physical therapy and complained of thigh pain, discomfort in his lower extremities, and numbness below his knee. (Tr. 135.)  The plaintiff showed "remarkable improvement" and was encouraged to use proper bending, lifting, and sitting techniques. (Tr. 135-36.)  He was instructed to apply heat or ice to his lumbar spine. (Tr. 133.)  Kimberly Fletcher, the physical therapist, noted that the plaintiff had recently been prescribed Medrol Dosepak,[9] Skelaxin, and Zanaflex.[10] *Id.*  On September 30, 2003, the plaintiff returned to physical therapy and reported that he felt better but that his back pain was aggravated by standing, walking, and sitting. (Tr. 133.)  The plaintiff related that his back pain radiated down his right thigh and that he had numbness below his right knee. *Id.*  Goals for the plaintiff included an extension program, a progressive walking program, and a strength and conditioning program.[11] *Id.*  She noted that the plaintiff had recently been prescribed Skelaxin,

---

[6] A foraminotomy is a surgical procedure that "remov[es] the roof of intervertebral foramina, done for the relief of nerve root compression." Dorland's at 724.

[7] A facetectomy is the "excision of the articular facet of a vertebra." Dorland's at 663.

[8] A discectomy is also known as a diskectomy, or the "excision of an intervertebral disk." Dorland's at 545.

[9] Medrol Dosepak is prescribed as an anti-inflammatory. Saunders Pharmaceutical Word Book 433 (2009) ("Saunders").

[10] Skelaxin and Zanaflex are prescribed as skeletal muscle relaxants. Saunders at 773.

[11] It is not clear whether the plaintiff returned to physical therapy after September 30, 2003, except for a Functional Capacity Evaluation ("FCE") conducted on November 11, 2003, by a different physical therapist.

4

Zanaflex, and Vioxx. *Id.* On the same day, Dr. Abram examined the plaintiff and found that he showed improvement and had decreased pain levels but was still sleepless. (Tr. 149.)

On October 28, 2003, the plaintiff returned to Dr. Abram and he noted that the plaintiff showed improvement and was healing. (Tr. 148.) He continued to prescribe Vioxx for the plaintiff. *Id.* On November 11, 2003, Kelly Ziegler, a physical therapist with STAR Physical Therapy, performed a FCE and noted that the plaintiff reported pre-test pain as a four in severity and post-test pain as a two in severity. (Tr. 138.) She determined that the plaintiff could "function at the LIGHT-MEDIUM Physical Demand level with maximum lifting/carrying of 25 to 40 lbs." *Id.* Ms. Ziegler noted that the plaintiff's lower back pain limited his ability to squat, bend, and crouch, and that his "[s]itting tolerance [was] limited to approximately 1 continuous hour." *Id.* She also found that he had moderate limitation in his lumbar range of motion, weakness in his right leg, normal gripping and grasping in both hands, and fine motor coordination. *Id.* On November 18, 2003, Dr. Abram reviewed the plaintiff's FCE and found the results to be valid. (Tr. 147.) He released the plaintiff to return to work within the restrictions outlined in his FCE. (Tr. 146.)

On February 10, 2004, Dr. Ray completed a Medical Source Statement of Ability to Do Work-Related Activities ("Medical Source Statement") on the plaintiff (tr. 157-60) and opined that he could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds. (Tr. 157-58.) She noted that in an eight hour workday the plaintiff could stand/walk for approximately six hours and sit for less than six hours with normal breaks, and that he could climb frequently and balance, stoop, crouch, and kneel occasionally. (Tr. 158-59.) Dr. Ray also determined that the plaintiff should never crawl, had numbness in his right foot, was able to push/pull less than thirty pounds, and had no environmental restrictions. (Tr. 159-60.) The next day,

5

Dr. Ray again examined the plaintiff and opined that he had a decreased range of motion and pain in his back flexion, extension, and lateral flexion. (Tr. 163.) She noted that his lower back pain causes sleeplessness and recommended that he continue his current treatment plan. *Id.*

On May 17, 2004, a Tennessee Disability Determination Section ("DDS") physician completed a physical residual functional capacity ("RFC") assessment on the plaintiff[12] (tr. 168-72) and opined that he could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds. (Tr. 169.) The DDS physician noted that the plaintiff could stand/walk and sit for approximately six hours in an eight hour workday, had unlimited capacity to push and pull, and could frequently climb, balance, stoop, kneel, crouch, and crawl. (Tr. 169-70.)

On September 20, 2005, Dr. Albert Gomez, a consultative DDS physician, conducted an examination of the plaintiff. (Tr. 174.) Dr. Gomez determined that the plaintiff had "moderated tenderness to palpation in the lumbar spine" and that he had a full range of motion "except for flexion which showed 80 degrees." (Tr. 176.) X-rays of the plaintiff's back, though mostly normal, revealed mild degenerative changes in his spine (tr. 176, 182-83) and Dr. Gomez diagnosed the plaintiff with chronic lower back pain. (Tr. 176.) Dr. Gomez also completed a Medical Source Statement on the plaintiff (tr. 178-81) and opined that he could occasionally lift/carry up to twenty pounds and frequently lift/carry up to ten pounds. (Tr. 178.) He noted that in an eight hour workday the plaintiff could stand/walk for approximately six hours and sit for about six hours, and that he could climb, balance, stoop, crouch, crawl, and kneel occasionally. (Tr. 178-79.) Dr. Gomez found

---

[12] The last page of this RFC assessment is missing from the record, so the name of the DDS physician is not provided. The Commissioner attributes this RFC assessment to DDS physician Dr. Denise Bell. Docket Entry No. 25, at 3.

6

that the plaintiff's ability to push/pull and reach was limited and that he should have limited exposure to vibration and hazards. (Tr. 179-81.)

On November 7, 2005, the plaintiff presented to the Tennessee Valley Veterans Administration ("VA") with complaints of lower back pain that radiated down his right leg, and he reported that he felt better standing instead of sitting. (Tr. 202-05)  The plaintiff was prescribed Medrol, Flexeril,[13] and Toradol.[14] (Tr. 204.)  The plaintiff returned to the VA on November 18, 2005, and treatment notes indicated that he was "ambulating well and changing positions with no sign of pain." (Tr. 202-03.)  It was recommended that the plaintiff strengthen his abdominal muscles. (Tr. 202.)  On December 3, 2005, the plaintiff presented the VA with complaints of lower back pain and numbness in his right leg. (Tr. 198.)  The plaintiff was diagnosed with tenderness in the right paraspinal muscles of his lower back and was prescribed Flexeril. (Tr. 200.) On December 23, 2005, the plaintiff returned to the VA for an "initial primary care visit" that consisted of a general physical and blood work. (Tr. 191-96.)  The plaintiff reported Flexeril had helped his back pain (tr. 192) and he was diagnosed with chronic lower back pain. (Tr. 193.)

### B.  Hearing Testimony: The Plaintiff and the Vocational Expert

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff and a Vocational Expert ("VE") testified. (Tr. 268-301.)  The plaintiff testified that he completed school through the eleventh grade and that he previously worked as a truck driver. (Tr. 272-73.)  He

---

[13] Flexeril is prescribed as a skeletal muscle relaxant. Saunders at 294.

[14] Toradol is a nonsteroidal anti-inflammatory drug that is prescribed "for moderately severe acute pain." Saunders at 713.

explained that he could no longer work due to lower back pain and numbness in his right leg. (Tr. 273-74.)  The plaintiff related that he had been seeing a nurse practitioner at the VA since November of 2005. (Tr. 274.)

The plaintiff explained that he was injured at work in 2003 and that he had back surgery in August of 2003. (Tr. 275-76.)  He stated that he is able to sit for 30 minutes, stand for 30 to 40 minutes, walk "a couple hundred yards," and lift 25 to 30 pounds. (Tr. 278-79.)  The plaintiff testified that he was a patient of Dr. Ray for a year before he hurt his back and that she restricted him to lifting over 20 pounds occasionally. (Tr. 281-82.)  He related that he takes Skelaxin, a muscle relaxant, and that his pain originates in his lower back and radiates down his leg. (Tr. 283.)  The plaintiff testified that his leg pain occurs when he makes a sudden move or bends over, and that he tries to "get up and move around" to alleviate it. *Id.*  He also testified that after standing or walking for 15 to 20 minutes he has leg cramps. (Tr. 284.)

The plaintiff related that the only medication he took between treatment by Dr. Ray and his initial visit to the VA at the end of 2005 was Ibuprofen. (Tr. 284-85.)  He testified that when he moves his kitchen table, he feels "pulling" in his lower back and "tingling" in his right leg. (Tr. 285.)  The plaintiff explained that he does not have difficulty reaching "straight out" but that he does have discomfort when he reaches in different directions. (Tr. 286.)  He testified that he sought medical treatment from the VA for cramps in his back and right leg. (Tr. 287.)  The plaintiff reported that he is able to do laundry, dusting, and retrieve mail from a mailbox that is located about 200 yards from his home, but he is no longer able to hunt, fish, or travel to his mother-in-law's house. (Tr. 288-90.)

8

The VE, Gary Sturgill, classified the plaintiff's previous job as a truck driver as medium and semi-skilled work. (Tr. 291.) The ALJ asked the VE to consider Dr. Gomez's Medical Source Statement and the work that the plaintiff would be able to perform, and the VE responded that he would have a light RFC with limits on his manipulative functioning and would not be able to return to his past work. *Id.* The VE related that the plaintiff would be able to perform work as a retail salesperson, counter clerk, and cashier. (Tr. 292.) The ALJ then asked the VE to consider the physical RFC completed by a DDS physician and the work that the plaintiff would be able to perform, and the VE answered that he would have a RFC to perform a full range of light work but would not be able to return to his past work. (Tr. 292-93.) The VE testified that the plaintiff would be able to work as a retail salesperson, counter clerk, and cashier. (Tr. 293.)

The ALJ next asked the VE to consider Dr. Ray's Medical Source Statement, and the VE responded that the plaintiff would have a light RFC and would not be able to return to his past job. (Tr. 294.) The VE explained that the plaintiff would be able to work as a salesperson, counter clerk, and cashier. *Id.* The ALJ then asked the VE to consider Dr. Abram's FCE and he answered that the plaintiff would be able to perform light work but would be precluded from returning to his past job. (Tr. 295.) In the ALJ's final hypothetical, she asked the VE if the plaintiff could return to his past work if he could stand for 30 to 40 minutes, sit for 30 minutes, lift 25 to 30 pounds and not more than 50 pounds, and walk "a couple of hundred yards." (Tr. 296.) The VE answered that the plaintiff would be precluded from all work. *Id.*

The plaintiff's attorney asked the VE whether working as a retail salesperson, counter clerk, and cashier required prolonged standing, and the VE responded that those three positions did require prolonged standing but had a sit/stand option available. (Tr. 296-97.) The VE testified that the

9

sit/stand option would not be "at will" and that if the plaintiff's pain dictated his need to sit/stand then he would be precluded from working those three jobs. (Tr. 297.) The VE related that it is customary for a worker to take a 15 minute break for every two hours of work. *Id.* The VE testified that if the plaintiff needed to walk around, each of the three jobs that he listed would accommodate that need. *Id.* However, the VE testified that if the plaintiff needed to walk 100 yards from a particular area to relieve his pain, he would not be able to perform any of the three jobs he listed. (Tr. 298.)

### III.  THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on June 8, 2006. (Tr. 19-25.) Based on the record, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.    The claimant has the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity for lifting/carrying 20 pounds occasionally an [sic] 10 pounds frequently; standing/walking 6 hours; sitting 6 hours; limited pushing/pulling in the upper and lower extremities; occasional climbing, balancing, kneeling, crouching, crawling and stooping; occasionally reaching in all directions; and limited exposure to vibration and hazards.

10

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on October 20, 1956 and was 46-years-old on the alleged disability onset date, which is defined as a younger individual 45-49 (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 202.1564).

9.      Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11.     The claimant has not been under a "disability," as defined in the Social Security Act, from July 7, 2003 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 21, 24-25.)

## IV.  DISCUSSION

### A.  Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g).  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases).  The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if the evidence could also support another conclusion. *Her v. Comm'r of Soc. Sec.,*

11

203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

12

Second, the plaintiff must show that he suffers from a "severe impairment." A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that he meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent him from doing his past relevant work, he is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant

13

work, or proving that a particular past job should not be considered relevant. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, he must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that he is unable to perform his prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines "grid" as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of his functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the plaintiff can perform, he is not disabled.[15] *Id. See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d

---

[15] This latter factor is considered regardless of whether such work exists in the immediate area in which the plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if he applied. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir. 1970).

14

860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B.  The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's case at step five of the five-step process. (Tr. 24.)  At step one, the ALJ found that the plaintiff successfully demonstrated that he had not engaged in substantial gainful activity since July 7, 2003, the alleged onset date of disability. (Tr. 21.)  At step two, the ALJ found that the plaintiff's degenerative disc disease was a severe impairment. *Id.*  At step three, the ALJ determined that the plaintiff's impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4. *Id.*  At step four, the ALJ concluded that the plaintiff could perform a "limited range of light work" but could not perform any of his past relevant work. (Tr. 24.)  At step five, the ALJ found that the plaintiff could work as a  retail sales person, counter clerk, and cashier. (Tr. 25.)

The effect of this decision was to preclude the plaintiff from DIB and to find him not disabled, as defined in the Social Security Act, at any time after July 7, 2003, through the date of the ALJ's decision.

### C.  The plaintiff's Assertions of Error

The plaintiff contends that the ALJ erred by failing to accept the VA medical evidence as evidence from a competent medical source and by failing to properly consider the plaintiff's sit/stand limitations. Docket Entry No. 18, at 7-21.  The plaintiff also argues that the ALJ failed to

demonstrate the existence of a substantial number of jobs in the national economy that he could perform. Docket Entry No. 18, at 22-24.

### 1. The ALJ properly analyzed the medical evidence from the VA.

The plaintiff contends that the ALJ did not properly evaluate the plaintiff's medical records from the VA. Docket Entry No. 18, at 7-9.  Specifically, the plaintiff agues that the ALJ violated Social Security Ruling ("SSR") 06-03p by concluding that his medical records from the VA were not credible since he was often examined by a nurse practitioner. *Id.* at 7-8.  The ALJ found that

> [i]n November 2005, [the plaintiff] presented to [the VA] complaining of radicular back pain.  He reported that his pain had resolved following his 2003 surgery, but that he had has [sic] continued to experience numbness in the right leg.  He stated that he was doing pretty well until he lifted a garbage bag,[16] and has since experienced shooting pain from his back into his right leg.  Physical examination showed that he moved quite well, though he preferred standing to sitting.  Motor strength was good except for right leg strength limited by pain.  It was otherwise unremarkable.  He was diagnosed with muscular back pain, and was prescribed a muscle relaxer.  He returned a week later, stating that his pain was much improved and was almost totally resolved.  In December, he reported no new complaints.  Further review of the VA records shows the [plaintiff] was seen only by Andrea Stupka, a nurse practitioner.[17]  He did not see a physician and no medical source statement was provided.

(Tr. 23.)

The plaintiff correctly contends that under SSR 06-03p a nurse practitioner is not considered an "acceptable medical source" but that "[o]pinions from these medical sources, who are not

---

[16] The VA progress notes of the plaintiff's November 7, 2005, and November 18, 2005, visits indicated that he "pick[ed] up" a "bag of trash" and a "trash can," respectively. (Tr. 202, 205.)

[17] The plaintiff is correct that he was not seen exclusively by Ms. Stupka, as the ALJ said. He was also seen by physician assistants and other nurses and may have been seen on one occasion by a physician. *See* Tr. 197-205.  However, from the plaintiff's testimony, it appears that he only saw a nurse practitioner and perhaps a "neurosurgeon assistant." (Tr. 274-75.)

16

technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." Docket Entry No. 18, at 7; SSR 06-03p, 2006 WL 2329939, at *2-3. SSR 06-03p notes that the weight given to evidence from medical sources who are "not 'acceptable medical sources' . . . may vary according to the particular facts of the case, the source of the opinion, *including that source's qualifications*, the issue(s) that the opinion is about, and many other factors, as described below."[18] 2006 WL 2329939, at *4. (Emphasis added.) Additionally, SSR 06-03p points out that an opinion from an "acceptable medical source" may be given greater weight than an opinion from a medical source who is not an "acceptable medical source" since "acceptable medical sources" are "the most qualified health care professionals," but depending on the particular factors in a case, such as frequency of examinations and quality of evidence, "it may be more appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' . . . ." *Id.* at 5.

It appears that the plaintiff is arguing that, because nurse practitioners and/or other medical sources who are not "acceptable medical sources" consulted with and worked under the supervision of "acceptable medical sources," medical records that they authored should have more weight. Although the plaintiff provided no case law to support that proposition, SSR 06-03p does acknowledge that the role of nurse practitioners and physician assistants in handling treatment and

---

[18] The other factors used to evaluate opinions from medical sources who are not "acceptable medical sources" include: the length of the relationship between the source and the individual, whether the source's opinion is consistent with other evidence in the record, the relevance of the source's evidence, the clarity of the source's explanation, and whether the source "has a specialty or area of expertise related to the individual's impairment." SSR 06-03p, 2006 WL 2329939, at *4.

evaluation functions previously handled primarily by physicians, and recognizes the importance of the opinions of those medical sources. SSR 06-03p, 2006 WL 2329939, at *3.

Regardless, as the Commissioner argues, it is difficult to conclude from the ALJ's decision that she refused to accept the plaintiff's VA medical records as a competent medical source or "reject[ed]" those records in their entirety. Docket Entry Nos. 18, at 8, and 25, at 7-8. It is clear that the ALJ reviewed the plaintiff's VA medical records and may have assigned less weight to those records in part because the plaintiff was largely examined by a nurse practitioner, but the ALJ is allowed to consider the "source's qualifications" when assigning weight to opinions from a medical source that is "not an 'acceptable medical source.'" SSR 06-03p, 2006 WL 2329939, at *5. Further, the plaintiff's medical records from the VA do not indicate that the plaintiff had a significant lower back impairment. The record shows that on November 7, 2005, the plaintiff presented to the VA with complaints of lower back pain (tr. 202-05), but that when he returned eleven days later he was "ambulating well and changing positions with no sign of pain." (Tr. 202-03.) The plaintiff presented to the VA again on December 3, 2005, with complaints of lower back pain and he was prescribed Flexeril. (Tr. 198-200.) When the plaintiff returned to the VA on December 23, 2005, he reported that Flexeril had helped his back pain.[19] (Tr. 192.) In sum, the ALJ properly evaluated the plaintiff's VA medical records since she did not "reject" the records and complied with SSR 06-03p in assigning appropriate weight to the records.

---

[19] Although the plaintiff assessed his pain on November 7, 2005, as a "10," indicating the "[w]orst imaginable pain" (tr. 204), the progress notes thereafter reflect improvement and do not include further pain assessments.

**2. The ALJ properly consider the plaintiff's sit/stand limitations.**

The plaintiff argues that the ALJ failed to properly consider his sit/stand limitations in determining what type of work he would be able to perform. Docket Entry No. 18, at 10-21. The ALJ concluded that the plaintiff's RFC's allowed him to perform a "limited range of light work" (tr. 24), but the plaintiff contends that he is incapable of performing jobs at that level since he is not able to sit for long periods of time and light work "requires a good deal of walking or standing, or . . . *sitting most of the time* with some pushing and pulling of arm or leg controls." Docket Entry No. 18, at 11 (quoting 20 C.F.R. § 404.1567(b)). (Emphasis added.)

The plaintiff's ability to sit/stand was evaluated on several occasions. On November 11, 2003, Ms. Ziegler, a physical therapist, completed a FCE and noted that his "[s]itting tolerance [was] limited to approximately 1 continuous hour." (Tr. 138.) Dr. Abram reviewed the FCE and concluded that the results were valid. (Tr. 147.) On February 10, 2004, Dr. Ray completed a Medical Source Statement on the plaintiff and found that in an eight hour day he could stand/walk for about six hours and sit, with normal breaks, for less than six hours. (Tr. 158.) On May 17, 2004, a DDS physician completed a physical RFC and opined that the plaintiff could stand/walk and sit for approximately six hours in an eight hour workday. (Tr. 169-70.) On September 20, 2005, Dr. Gomez completed a Medical Source Statement on the plaintiff and opined that he could stand/walk for about six hours and sit for about six hours in an eight hour workday. (Tr. 178-79.) However, the plaintiff testified that he is able to sit only for 30 minutes, stand for 30 to 40 minutes, and walk "a couple of hundred yards." (Tr. 278-79.)

The plaintiff divides his sit/stand argument into four sub-arguments. He contends that the ALJ improperly "dismissed" the opinion of two treating physicians, "improperly substituted her own

19

observations about the plaintiff's sit/stand limitations for those of examining medical sources," did not properly apply the VE's testimony, and failed to follow *Wages v. Sec'y of Health & Human Servs.*, 854 F.2d 815 (6th Cir. 1985), controlling Sixth Circuit precedent. Docket Entry No. 18, at 17.

First, the ALJ did not "dismiss" the medical findings of Dr. Ray or Dr. Abram and her decision to not assign their findings controlling weight was not unfavorable to the plaintiff. She noted that "full examinations were performed by [Ms. Ziegler] at Dr. Abram[']s request, Dr. Ray, and Dr. Gomez," and that the findings of Dr. Ray and Dr. Gomez, concluding that the plaintiff was capable of performing a limited range of light work, "were the most restrictive." (Tr. 24.) The ALJ assigned "significant weight" to the findings of both Dr. Gomez and Dr. Ray, but she decided to give slightly greater weight to Dr. Gomez's Medical Source Statement because his findings were "slightly more restrictive than Dr. Ray's." *Id.* The plaintiff contends that the ALJ should have concluded that Dr. Ray's Medical Source Statement was the most restrictive, instead of Dr. Gomez's Medical Source Statement, since Dr. Ray found that he could sit for *less than* six hours in an eight hour workday while Dr. Gomez determined that he could sit for *about* six hours in an eight hour workday. (Tr. 158-59, 178-79.) However, the ALJ relied on the testimony of the VE, who took into account all of the restrictions in Dr. Gomez's report--not just the plaintiff's ability to sit--before concluding that Dr. Gomez's findings were the most restrictive.[20] (Tr. 291, 294.) Thus, the ALJ's

_____

[20] The VE testified that both Dr. Ray's and Dr. Gomez's Medical Source Statements indicated that the plaintiff had a RFC to perform a reduced range of light work (Tr. 291, 294.) The ALJ then asked the VE to determine whether Dr. Ray's or Dr. Gomez's Medical Source Statement was more restrictive and thus more favorable to the plaintiff. (Tr. 294.) The VE answered that Dr. Gomez's Medical Source Statement restricted the plaintiff's activities to a greater degree. *Id.* Specifically, the VE testified that based on Dr. Ray's Medical Source Statement, the plaintiff's RFC was "[j]ust a slightly reduced range of light work" (*id.*), whereas based on Dr. Gomez's Medical Source Statement, the plaintiff's RFC was for a "reduced range of light work with some limits on manipulative functions . . . ." (Tr. 291.) It should be noted that although the VE found that

decision to assign less weight to Ms. Ziegler's/Dr. Abram's FCE and Dr. Ray's Medical Source Statement and controlling weight to Dr. Gomez's Medical Source Statement, because it was the most restrictive evaluation, was supported by the VE's testimony. (Tr. 24, 291, 294.) Therefore, the Court will not address the treating physician argument since it is clear that the ALJ's decision to assign controlling weight to Dr. Gomez's findings was not unfavorable to the plaintiff.

Next, the plaintiff argues that the ALJ improperly supplanted her own observation of the plaintiff's sit/stand limitations for those of examining physicians when she assessed the plaintiff's credibility based on his behavior at the hearing. Docket Entry No. 18, at 18-19. The ALJ stated that "[t]he [plaintiff] testified that he can only sit 30 minutes; however, he sat seemingly comfortable at the hearing for one hour." (Tr. 23.) It is well-established in the Sixth Circuit that "[a]n 'ALJ may distrust a [plaintiff's] allegations of disabling symptomatology if the subjective allegations, *the ALJ's personal observations*, and the objective medical evidence contradict each other." *Williams v. Comm'r of Soc. Sec.*, 93 Fed. Appx. 34, 2004 WL 445184, at *2 (6th Cir. Mar. 9, 2004) (quoting *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir.1990)). (Emphasis added.) When the plaintiff's credibility, "especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the [plaintiff] 'is invaluable, and should not be discarded lightly.'" *Kirk*, 667 F.2d at 538 (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Although it is error to make a credibility determination based "solely or primarily on [the ALJ's own] personal observations," "it is not improper for the ALJ to base [her] credibility determination *in part* on [her] observations of the [plaintiff]." *Sherlock v. Comm'r of Soc. Sec.*, 2008

---

Dr. Gomez's Medical Source Statement resulted in a more restrictive RFC than did Dr. Ray's Medical Source Statement, he testified that, based on both Medical Source Statements, the plaintiff could perform work as a retail salesperson, counter clerk, and cashier. (Tr. 292-94.)

WL 3876072, at *8 (W.D. Mich. July 30, 2008). (Emphasis in original.) *See also Gaffney v. Bowen*,

825 F.2d 98, 101-02 (6th Cir.1987) (the ALJ's partial reliance on personal observations is not

inappropriate when ALJ "examined the entire record").

When the ALJ evaluated the plaintiff's complaints of pain, she found that the plaintiff's

"statements concerning the intensity, duration, and limiting effects" of his alleged symptoms were

not entirely credible. (Tr. 23.)  In addition to her personal observation, she based her credibility

determination on the fact that

> he repeatedly complained of radicular pain; however, straight leg raise testing gave
> mixed results more indicative of muscular pain.  In [the DDS physician's physical
> RFC], straight leg tests were negative and motor and sensory tests were normal.  In
> [the VA medical records], straight leg raise was inconclusive, noting that he had back
> pain but his leg pain seemed more like cramping.  During Dr. Gomez's physical
> examination, straight leg raise was positive while lying, but negative in the sitting
> position.  Nonetheless, in November 2005, the [plaintiff] denied any difficulty
> walking, which would support some work at the light level.
>
> In review of the entire record, full examinations were performed by Star Physical
> Therapy at Dr. Abram[']s request, Dr. Ray, and Dr. Gomez.  Dr. Ray and
> Dr. Gomez's findings that the [plaintiff] was capable of performing a limited range
> of light work were the most restrictive.  Their opinions are well-supported by the
> objective medical evidence and are not inconsistent with the other substantial
> evidence of record.  Specifically, each found limitations consistent with a limited
> range of light work, supporting the [plaintiff's] partially credible allegations and the
> objective medical evidence, which showed only mild post-surgical degenerative
> changes at L5-S1.  Their findings more fully support the [plaintiff's] reports of daily
> activities such as cleaning the kitchen and bathroom, walking approximately 400
> yards per day to the mailbox, doing laundry, and watching television.

(Tr. 23-24.) (Internal citations omitted.)  The ALJ's personal observation was only one component

of her determination that the plaintiff's subjective complaints were not entirely credible. *Id.*  She

also reviewed and relied on the plaintiff's medical records, treatment history, and daily activities.

*Id.*  Therefore, the record evidence clearly indicates that the ALJ complied with the Sixth Circuit

authority cited above and that she did not substitute her observations of the plaintiff for those of examining medical sources.

The plaintiff also contends that the ALJ did not properly apply the VE's testimony since none of the hypotheticals that she posed to the VE, resulting in his determination that the plaintiff perform work as a retail sales person, counter clerk, or cashier, included a sit/stand option. Docket Entry No. 18, at 20. Once the Commissioner determines that the plaintiff is not able to perform his past relevant work, the burden shifts to the Commissioner to prove that the plaintiff has the RFC to perform other work in the national economy. *Anthony v. Astrue,* 266 Fed. Appx. 451, 460-61 (6th Cir. Feb. 22, 2008) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir.1990)). The Commissioner can carry that burden by relying on either the Social Security Administration's medical-vocational guidelines or the testimony of a VE who assesses the "[plaintiff's] ability to perform work in light of the [plaintiff's] limitations." *Anthony,* 266 Fed. Appx. at 461. Yet the Commissioner can only rely on the VE's testimony "if the testimony is 'given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant aspects.'" *Id.* (quoting *Felisky*, 35 F.3d at 1036).

At the hearing, the ALJ asked the VE to consider the medical reports of Dr. Gomez, Dr. Ray, Ms. Ziegler/Dr. Abram, and a DDS physician, and he opined that their findings all indicated that the plaintiff could perform work as a retail salesperson, counter clerk, and cashier. (Tr. 292-95.) The ALJ and the plaintiff's attorney then asked the VE to consider hypotheticals that included more stringent sit/stand limitations for the plaintiff, but these hypotheticals were based on the plaintiff's subjective complaints of pain which, as previously discussed, the ALJ correctly determined were not credible. (Tr. 296-97.) Plainly stated, substantial evidence in the record supported the ALJ's

23

hypotheticals that resulted in the VE testifying that the plaintiff could perform work in the national economy, but substantial evidence in the record did not support the ALJ's or plaintiff attorney's hypotheticals to the VE that required a specific sit/stand limitation for the plaintiff. (Tr. 292-97.) Therefore, the ALJ properly relied on the VE's testimony that found the plaintiff could perform work as a retail salesperson, counter clerk, and cashier.

Finally, the plaintiff argues that "the ALJ failed to follow controlling precedent within the Sixth Circuit, namely *Wages v. Sec'y of Health & Human Servs*." Docket Entry No. 18, at 20. He contends that the facts in *Wages* are analogous to those in this case since the VE in both situations did not "enumerate jobs with a discretionary sit/stand option." *Id.* at 21. This argument is unavailing since the record in *Wages* showed that the plaintiff was not able to sit/stand for long intervals and had to move around at will, but in this case the record does not indicate that the plaintiff had a similar significant sit/stand limitation. 854 F.2d at 497-98. (Tr. 138, 158-59, 169-70, 178-79.) Given this fundamental difference between *Wages* and the case at bar, the ALJ was not required to follow *Wages*.

The plaintiff's third assertion of error, contending that the ALJ failed "to demonstrate the existence of a substantial number of jobs in the national economy that the [p]laintiff could perform" (Docket Entry No. 18, at 22-24), was discussed previously as a sub-issue to the plaintiff's second assertion of error and will not be addressed further by the Court.

24

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 17) be DENIED and that the Commissioner's decision be affirmed.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge

25